UNITED STATES of America,
Appellee,

v.

Kevin Eric SCOTT, Defendant–
Appellant.

Docket No. 04–0927–CR.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 12, 2004.

Decided: Jan. 11, 2005.

Joey Lipton, Assistant United States Attorney, for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, N.Y. (Emily Berger, on the brief), for Appellee.

Edward S. Zas, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

Before: KEARSE, McLAUGHLIN, and CALABRESI, Circuit Judges.

MCLAUGHLIN, Circuit Judge:

Kevin Eric Scott appeals from a judgment of the United States District Court for the Eastern District of New York (Sifton, J.), convicting him, after a jury trial, of illegal reentry into the United States after deportation, in violation of 8 U.S.C. § 1326(a). This case has tracked a long, sinuous, almost Kafkaesque course.

This is the second time it has been before us. In 2003, we remanded the case for the district court to reconsider its denial of Scott's motion to dismiss the indictment in light of *United States v. Perez*, 330 F.3d 97 (2d Cir.2003), which we had decided during the pendency of Scott's appeal. *United States v. Scott*, 75 Fed.Appx. 30 (2d Cir.2003) (summary order).

On remand, Scott again challenged his indictment, under 8 U.S.C. § 1326(d), by collaterally attacking the deportation order upon which the charge was predicated. Scott claimed that he was prejudiced during the deportation proceeding by his counsel's ineffective assistance—namely, his failure to move for a waiver of deportation under § 212(c) of the Immigration & Nationality Act ("INA") of 1952, 8 U.S.C. § 1182(c) (repealed Sept. 30, 1996).

Despite our decision in *Perez*, the district court again denied Scott's motion to dismiss the indictment; and it upheld his conviction for illegal reentry. *United States v. Scott*, No. 02–0332 (E.D.N.Y. Feb. 9, 2004).

We now conclude that Scott *was* prejudiced by his counsel's ineffective assistance and that entry of the underlying deportation order was "fundamentally unfair" within the meaning of 8 U.S.C. § 1326(d).

We therefore reverse the district court's denial of Scott's motion to dismiss his indictment.

## BACKGROUND

Kevin Eric Scott is a thirty-one-year-old Jamaican native. In 1981, at the age of eight, Scott moved to the United States with his family and became a lawful permanent resident. He attended grade school, high school, and college in New York. Scott's mother, father, two sisters, and several other family members also live in New York. Between 1991 and 1996, Scott held various jobs in New York.

In October 1989, at the age of sixteen, Scott was convicted of grand larceny (3rd degree) in Queens, New York. Scott was seen putting a motorcycle into a stolen van. He received five years' probation.

In May 1995, Scott was convicted in the Bronx, New York, of criminal possession of stolen property (3rd degree). Scott reportedly sold two stolen vehicles to an undercover officer. He was sentenced to three- to six-years' incarceration. Scott served this sentence in the New York State Shock Incarceration Program ("SIP"), "an alternative form of correctional life stressing a highly structured and regimented daily routine which includes extensive discipline and counseling." N.Y. Comp.Codes R. & Regs. tit. 7, § 1800.6. Because of his successful completion of the SIP, Scott was released from custody after only six months.

In July 1995, while Scott was still in the SIP, the Immigration and Naturalization Service ("INS") ordered Scott to show cause why he should not be deported based on his two New York convictions for crimes of "moral turpitude." [*] Scott was

---

[*] At this time, Scott had two additional convictions in New York. He was convicted in 1994 of unauthorized use of a vehicle and sentenced to three days of community service.

also instructed to report any change of address or phone number to the immigration court.

In October 1995, Scott appeared before the immigration judge ("IJ") and requested an opportunity to retain an attorney. The hearing was adjourned. In December 1995, another hearing was adjourned because Scott's counsel could not be there.

On January 11, 1996, Scott's counsel appeared at a third hearing, but this time Scott did not. At the hearing, the IJ stated his belief that Scott was eligible for discretionary relief from deportation under § 212(c) of the INA—i.e., "waiver of deportation." His counsel conceded that without the waiver Scott was deportable based on his two prior convictions. The IJ, therefore, instructed counsel to file a § 212(c) application in a month, i.e., no later than February 12, 1996. Counsel stated that he did not need more time to file. The IJ scheduled the § 212(c) hearing for March 19th.

Despite the IJ's instructions, Scott's counsel never filed an application for § 212(c) relief.

Shortly after the January 11th hearing, Scott was released from state custody and taken into INS custody. He was released on an immigration bond.

On July 30, 1996, the IJ convened another deportation hearing. This time neither Scott nor his counsel appeared. The IJ observed that notice of the hearing was delivered to counsel's address of record. But, unbeknownst to the judge, counsel's address had changed. Based on the findings made at the January 11th hearing, the IJ issued an order of deportation in absentia.

In September 1996, Scott appealed the deportation order to the Board of Immigration Appeals ("BIA"). His attorney stated that his office had relocated at the end of January 1996, but that he had "forgotten to send a change of address notice to the New York Immigration Office." Attached to the appeal was an affidavit by Scott stating that he had not been notified of the July 30 deportation hearing.

Later that month, Scott was arrested in New York for attempted auto theft. At the arrest, burglar's tools were found on his person.

Two years later, in August 1998, the BIA dismissed Scott's appeal because the BIA was precluded from considering an appeal from a deportation order entered in absentia. The proper way to challenge such an order was to petition the IJ to reopen the deportation proceedings.

In September 1998, Scott was convicted in New York of possessing burglar's tools, a misdemeanor, in connection with his 1996 arrest. He was sentenced to thirty days' incarceration.

In March 2001, Scott was taken into INS custody. A month later, Scott was deported to Jamaica. At some point between April and October 2001, Scott returned to the United States.

In October 2001, Scott was arrested in New York and charged with: (1) grand larceny (4th degree); (2) illegal possession of vehicle identification number plates; and (3) criminal possession of stolen property (5th degree).

In March 2002, Scott was indicted for illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326(a), in the Eastern District of New York.

In 1995, Scott was convicted of criminal possession of stolen property, for which he was sentenced to two- to four-years' imprisonment, which ran concurrently with his other 1995 conviction for criminal possession of stolen property.

In April 2002, Scott moved to dismiss the indictment for illegal reentry under Fed.R.Crim.P. 12(b)(2). Scott argued that his 1996 deportation proceeding, conducted *in absentia,* was fundamentally unfair and thus could not serve as the basis for a reentry indictment. Specifically, Scott claimed that his attorney had been ineffective, thus violating his due process rights. According to Scott, had his attorney filed a § 212(c) application in February 1996, his deportation would have been waived. In support of this claim, Scott cited his fifteen years of residence in New York, his strong family ties to the United States, education in New York, completion of the SIP, and a criminal history that involved neither violence nor drugs.

On May 31, 2002, the Eastern District of New York (Sifton, *J.*) denied Scott's dismissal motion on procedural grounds. *United States v. Scott,* No. 02–0332 (E.D.N.Y. May 31, 2002). The court ruled that Scott could have appealed the BIA's 1998 decision to this Court on the ground of attorney incompetence, but had failed to do so. Therefore, Scott could not meet the requirement of § 1326(d) that he have been deprived of the opportunity for judicial review of the underlying deportation order. Nor did Scott notify the Immigration Office of his address upon release from state custody in 1996.

In June 2002, Scott sought to reargue his motion to dismiss before Judge Sifton, claiming that he was denied a fair opportunity to seek judicial review of the BIA's decision because he was never notified of the BIA's 1998 dismissal of his appeal. As proof of his diligence, Scott proffered a document from his INS file dated October 28, 1995, which proved that he had indeed provided his new address to the INS. Although acknowledging that the BIA's decision was not accompanied by an affidavit of service, the Government characterized

as "implausible" Scott's contention that he had no notice of the BIA decision.

In July 2002, Judge Sifton denied Scott's motion for reargument. *United States v. Scott,* No. 02–0332 (E.D.N.Y. July 10, 2002). In doing so, the court: (1) recognized that Scott's claims raised "serious questions about whether he had the opportunity for judicial review;" but (2) declined to resolve that issue, because even if it were true, "the entry of the deportation order was not fundamentally unfair" under 8 U.S.C. § 1326(d). The court reasoned, in part, that Scott's 1998 misdemeanor conviction for possession of burglar's tools would have undermined his application for § 212(c) relief by showing lack of rehabilitation.

Scott proceeded to trial. The jury found him guilty of illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326(a). Judge Sifton sentenced him to 41 months' imprisonment.

Scott appealed the denial of his motion to dismiss the indictment. While the appeal was pending, we decided *United States v. Perez,* 330 F.3d 97 (2d Cir.2003). Because *Perez* "deal[t] with many issues germane to [Scott's] case, and specifically the meaning of all three of § 1326(d)'s requirements," we vacated and remanded for Judge Sifton to reconsider Scott's motion to dismiss the indictment in light of our recent decision in *Perez. United States v. Scott,* 75 Fed.Appx. 30, 32 (2d Cir.2003) (summary order). We intimated no view on "whether *ex post* data is relevant, at all, in deciding whether 212(c) relief would have been denied and an alien prejudiced by counsel's failure to file a 212(c) application." *Id.* at 32 n. 3.

On remand, Scott argued that *Perez* required dismissal of the indictment. Scott submitted the declaration of Manuel D. Vargas, an immigration lawyer, stating that Scott "would have been likely to have

been granted a 212(c) waiver had he been afforded a waiver hearing during his deportation proceedings back in 1996." Vargas also stated that, between 1988 and 1996, immigration judges "would issue a decision orally on the day of the 212(c) waiver hearing in about one half of cases, and would issue decisions in writing generally within six months of the 212(c) waiver hearing date in the other half of cases." Although the Government could not proffer any additional evidence to show that Scott had been given notice of the BIA's 1998 dismissal, the Government urged the court to deny Scott's motion because he was not "a strong candidate" for § 212(c) relief.

In February 2004, Judge Sifton once again denied Scott's motion to dismiss:

> [I]f defendant had been granted 212(c) relief [in 1996], whether or not the INS decided to appeal that decision, once defendant received his later conviction [in 1998], the INS could have, and doubtless would have, reopened deportation proceedings against him.

*United States v. Scott*, No. 02–0332 (E.D.N.Y. Feb. 9, 2004). The court also held that Scott's 1998 misdemeanor conviction for possessing burglar's tools "alone would have been sufficient to warrant ... deportation." Moreover, the court opined that Scott would not have received § 212(c) relief, even if his 1998 misdemeanor conviction had been disregarded.

Scott now appeals the denial of his motion to dismiss the indictment.

## DISCUSSION

■ Because it entails mixed questions of law and fact, we review *de novo* the district court's denial of Scott's motion to dismiss the indictment. *United States v. Fernandez–Antonia*, 278 F.3d 150, 156 (2d Cir.2002).

■ Under § 1326 of the INA, it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States. 8 U.S.C. § 1326(a). "An alien can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated." *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir.2004). As the Supreme Court declared in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Id.* at 837–38, 107 S.Ct. 2148 (emphasis omitted).

Congress effectively codified the holding of *Mendoza–Lopez* in 8 U.S.C. § 1326(d), which provides:

> (d) In a criminal proceeding [for illegal reentry], an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

In *United States v. Perez*, 330 F.3d 97 (2d Cir.2003), we held that the defendant, a citizen of the Dominican Republic and permanent resident of the United States, had satisfied each of § 1326(d)'s three prongs. We therefore dismissed his indictment for illegal reentry.

First, we found that Perez had fulfilled the exhaustion requirement of § 1326(d)(1)

by appealing to the BIA the denial of his motion to reopen his deportation proceedings. *Id.* at 101.

Under the second prong, § 1326(d)(2), we held that Perez had been deprived of the opportunity for judicial review because: (a) his counsel failed to file, after stating that he would, a § 212(c) application, which "fell below the level of performance expected of competent counsel;" and (b) Perez was thereby prejudiced because "he ha[d] shown that he was eligible for § 212(c) relief and that he could have made a strong showing in support of his application for such relief." *Id.* at 101–02 ("Deprivation of the opportunity for judicial review can be established by demonstrating ineffective assistance of counsel, and the failure of counsel to file a § 212(c) application can constitute ineffective assistance of counsel.").

Finally, under the third prong, § 1326(d)(3), we held that the entry of the order against Perez was "fundamentally unfair" because he had shown, under § 1326(d)(2), ineffective assistance of counsel, which constituted a fundamental procedural error that prejudiced him. *Id.* at 104.

In collaterally attacking his 1996 deportation order, Scott invokes *Perez,* claiming that he has satisfied each of § 1326(d)'s three prongs—namely, that: (1) he exhausted his administrative remedies by challenging the 1996 deportation order on due process grounds before the BIA; (2) he was deprived of the opportunity for judicial review because his lawyer never filed a § 212(c) application on his behalf and because he (Scott) was never given notice of the BIA's 1998 dismissal of his appeal; *and* (3) the 1996 deportation order was fundamentally unfair because his lawyer's failure to seek § 212(c) relief was a prejudicial and fundamental procedural error.

I. *Sections 1326(d)(1) & (2): Exhaustion of Administrative Remedies and Deprivation of the Opportunity for Judicial Review*

Finding many parallels between *Perez* and the instant case, we conclude that Scott has satisfied the first two prongs of § 1326(d) (the exhaustion requirement and deprivation of the opportunity for judicial review) for the reasons stated in *Perez.* *See Perez,* 330 F.3d at 100–03. Indeed, the Government does not dispute that the first two requirements have been met.

II. *Section 1326(d)(3): Fundamental Unfairness*

■ The pivotal issue on this appeal is the third prong: whether "entry of the [deportation] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). To establish "fundamental unfairness" under § 1326(d)(3), a defendant "must show both a fundamental procedural error and prejudice resulting from that error." *Fernandez–Antonia,* 278 F.3d at 159.

A. *Fundamental Procedural Error*

■ In *Perez,* we found that counsel's failure to seek § 212(c) relief "after stating that he would at the deportation hearing, and without later informing his client otherwise, fell below the level of performance expected of competent counsel." *Perez,* 330 F.3d at 102. We held that this failure constituted a fundamental procedural error. *Id.* Likewise, here, we conclude that the failure of Scott's counsel to seek § 212(c) relief, after the IJ directed him to do so and after counsel specifically stated that he did not need more time to file, "fell below the level of performance expected of competent counsel." *Id.* Scott has shown a fundamental procedural error. *Cf. Copeland,* 376 F.3d at 71 (immigration judge's failure to inform alien of his right to seek

§ 212(c) relief was a fundamental procedural error). Accordingly, the issue at the heart of this case is whether Scott was prejudiced by his counsel's incompetence.

### B. *Prejudice*

 Recently, in *Copeland*, we clarified that "prejudice" in the context of § 1326(d) "is shown where there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Copeland*, 376 F.3d at 73 (emphasis added) (internal quotation marks omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). As the Supreme Court has defined it, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Is there a "reasonable probability" that Scott would have received a waiver of deportation had his counsel applied for § 212(c) relief in 1996? We believe so.

#### 1. *Role of Ex Post Data*

As an initial matter, we address whether the district court erred in considering *ex post* data (*i.e.*, Scott's 1998 conviction for possession of burglar's tools) in determining whether Scott was prejudiced by his counsel's failure to seek § 212(c) relief two years earlier. In denying Scott's motion to dismiss the indictment, the district court held that: (1) Scott's 1998 conviction for possession of burglar's tools would have undermined a showing of rehabilitation; (2) even if Scott "had been granted 212(c) relief, whether or not the INS decided to appeal that decision, once [Scott] received his later conviction [for possession of burglar's tools], the INS could have, and doubtless would have, reopened deportation proceedings against him;" and (3) "[t]he existence of the new conviction alone

would have been sufficient to warrant his deportation."

Scott argues that his 1998 conviction for possessing burglar's tools is *ex post* data that should have no bearing on whether he had a "reasonable probability" of obtaining § 212(c) relief in 1996. Consequently, according to Scott, the 1998 conviction is irrelevant to determining the issue of prejudice. We agree.

We begin our analysis with the language of § 1326(d)(3), which requires an alien to demonstrate that "the *entry* of the [deportation] *order* was fundamentally unfair." 8 U.S.C. § 1326(d)(3) (emphasis added). The statute's focus on the "entry" of the order suggests a temporal limitation on the district court's inquiry. In other words, the statute itself indicates that, contrary to the district court's analysis, the only pertinent issue is whether entry of the deportation order *in 1996* prejudiced Scott—regardless of Scott's potential deportability for some later crimes.

The BIA's decision in *Matter of Gordon*, 20 I. & N. Dec. 52, 1989 WL 331864 (BIA 1989), is also instructive. In *Gordon*, the alien, after receiving § 212(c) relief from deportation, was convicted of first degree assault. *Id.* at 54. The INS, in response to this new conviction, filed a motion to reopen deportation proceedings, arguing that the alien's subsequent conviction demonstrated a lack of rehabilitation. *Id.* The IJ agreed, withdrew § 212(c) relief, and ordered the alien deported. *Id.* The BIA sustained the alien's appeal, concluding that the INS may not withdraw a grant of § 212(c) relief from deportation based on subsequent criminal conduct. *Id.* at 55–56. Instead, according to the BIA, the INS must initiate new deportation proceedings. *Id.* at 56.

To allow the IJ to withdraw § 212(c) relief based on subsequent crimes, the BIA reasoned in *Gordon*, "would be to leave the

alien in a tenuous state indefinitely, without the benefit of the *procedural safeguards* afforded in a new deportation hearing." *Id.* (emphasis added). Similarly, as we are presently concerned about the process afforded to Scott at his deportation proceeding in 1996, it would be anomalous to consider criminal conduct after that date.

Nor are our recent decisions to the contrary. In *Copeland*, we remanded for the district court to consider whether the defendant-alien was prejudiced by the lack of a § 212(c) hearing. *Copeland*, 376 F.3d at 75. In doing so, we instructed the district court that the alien's "entire criminal record *at the time of his deportation* is relevant." *Id.* at 74 (emphasis added); *see also Perez*, 330 F.3d at 102 ("The government does not claim that any negative factors other than his conviction would have weighed against him at the time of his deportation."). Although this instruction suggests that the district court may have correctly considered Scott's 1998 conviction (which occurred before his actual deportation in April 2001), both *Copeland* and *Perez*, which focus on "the time of [ ] deportation," are distinguishable from Scott's case. Neither *Copeland* nor *Perez* dealt with an alien who committed a crime between the time of the deportation proceeding and the actual deportation, as Scott did here.

■ Based on the foregoing principles, we hold that § 1326(d)'s prejudice inquiry does not extend beyond the fairness of the deportation order itself. That is, in assessing whether the defendant-alien had a reasonable probability of not being deported at his proceeding but for counsel's incompetence, the district court should reconstruct events as they existed at the time of the disputed deportation proceeding, without considering future occurrences.

We now consider the other two ways in which the district court considered Scott's 1998 conviction. The Government seems to concede that the court erred in reasoning that "the INS could have, and doubtless would have, reopened deportation proceedings against him." *See Gordon*, 20 I. & N. Dec. at 56 ("Reopening may not serve as the vehicle by which subsequent crimes are considered after a section 212(c) waiver has been granted.").

Nonetheless, the Government maintains that Scott's additional conviction in 1998 for possession of burglar's tools is a crime of moral turpitude, which would have warranted new deportation proceedings. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). We need not resolve this issue, however, because whether the INS could initiate new deportation proceedings against Scott for the 1998 conviction has no bearing on the fairness of the deportation order entered against Scott on July 30, 1996.

### 2. The Merits: Was Scott Prejudiced?

For the reasons that follow, we conclude that Scott had a "reasonable probability" of receiving § 212(c) relief in 1996 and, perforce, that Scott was prejudiced by his counsel's ineffective assistance.

While in effect, § 212(c) of the I & N Act (repealed 1996) permitted certain aliens to seek a discretionary waiver of deportability. In "considering a 212(c) application, an immigration judge [had to] balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appear[ed to be] in the best interests of this country." *Lovell v. INS*, 52 F.3d 458, 461 (2d Cir.1995) (internal quotation marks omitted). *Adverse factors* include: (1) the nature and circumstances of the

exclusion ground at issue; (2) other immigration law violations; (3) the alien's criminal record; and (4) evidence indicative of an alien's undesirability as a permanent resident. *Id.*

*Favorable factors* include: (1) family ties to the United States; (2) many years of residency in the United States; (3) hardship to the alien and his family upon deportation; (4) United States military service; (5) employment history; (6) community service; (7) property or business ties; (8) evidence attesting to good character; and, in the case of a convicted criminal, (9) proof of genuine rehabilitation. *Id.*

Several factors would have weighed in favor of granting § 212(c) relief to Scott in 1996—fifteen years of residence in New York, strong family ties to New York, young age of lawful arrival in United States, and employment and education in New York. *See, e.g., Perez,* 330 F.3d at 102 (alien could have made a strong showing in support of § 212(c) relief because "several factors weighed in [his] favor: he had a steady history of employment, a wife who was a permanent resident, and a son who was a United States citizen"); *Gordon,* 20 I. & N. Dec. at 53 (despite convictions for robbery and receiving stolen property, "the [IJ] granted the respondent a section 212(c) waiver, finding that he had demonstrated strong family ties in the United States, and that his equities outweighed the negative factors in the record"); *United States v. Garcia–Jurado,* 281 F.Supp.2d 498, 515 (E.D.N.Y.2003) (holding that defendant would have been "a good candidate for a § 212(c) waiver" given that he had lived in the United States since he was a teenager, had "strong family ties in this country[,] . . . attended high school here, [and] was employed for a year prior to his arrest"), *appeal withdrawn,* No. 03–1586 (2d Cir. Jan. 29, 2004) (order granting motion of United States to withdraw its

appeal). According to Scott, his mother would also have testified that he is a "good father and a good husband," a "nice caring person" who is "willing to help and very considerate," and that he was physically abused as a child.

Although the parties dispute the degree of rehabilitation a defendant-alien must achieve, Scott makes a legitimate claim under any reasonable standard that he could have persuaded an IJ in 1996 that he was rehabilitated, given his successful completion of the SIP. *Compare Matter of Buscemi,* 19 I. & N. Dec. 628, 635, 1988 WL 235453 (BIA 1988) (alien with criminal record will "ordinarily be required to make a showing of rehabilitation before relief will be considered as a matter of discretion"), *with Matter of Catalina,* 21 I. & N. Dec. 38, 40, 1995 WL 314389 (BIA 1995) ("A clear showing of reformation is not an absolute prerequisite to a favorable exercise of discretion in every section 212(c) application involving an alien with a criminal record.").

Scott's criminal record as of 1996 would undoubtedly have weighed against § 212(c) relief. Prior to being ordered deported in 1996, Scott had four convictions, for which he was sentenced to five years of probation, three days of community service, two to four years of imprisonment, and three to six years of imprisonment, respectively. In *Perez,* we found that the alien could have made a strong showing for § 212(c) relief despite his single conviction for a drug trafficking offense, for which he was sentenced to six months' imprisonment. *See Perez,* 330 F.3d at 99. Although Scott has a lengthier criminal history than Perez, Scott's multiple crimes were neither violent nor drug-related. Hence, as in *Perez,* Scott's criminal record would not have precluded § 212(c) relief.

There is some indication, as the district court suggested, that, given his "lengthy

criminal history," Scott may have been required to show "unusual or outstanding equities" in his favor. *Matter of Burbano*, 20 I. & N. Dec. 872, 875, 1994 WL 520994 (BIA 1994) ("[R]espondent's lengthy criminal history requires him to show that he has unusual or outstanding equities in this country."). However, an alien's strong family ties to the United States in addition to his extensive educational and employment histories in the United States have, on occasion, been held to outweigh a single conviction of third degree drug possession, a crime more serious than any of Scott's. *Garcia–Jurado*, 281 F.Supp.2d at 500, 515. Therefore, we are persuaded that Scott's multiple convictions for lesser crimes would not have outweighed his strong ties to the United States.

We also find noteworthy that, between 1989 and 1995, more than one-half of the applications filed for § 212(c) relief were granted. *INS v. St. Cyr*, 533 U.S. 289, 296 & n. 5, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (section 212(c) relief is granted in a very "substantial percentage" of cases).

Based on these factors, we conclude that Scott had a "reasonable probability" of receiving § 212(c) relief in 1996. Thus, the failure of Scott's counsel to seek § 212(c) relief was prejudicial and rendered entry of the deportation order "fundamentally unfair" within the meaning of § 1326(d). Accordingly, we hold that the deportation order was unlawful and that the district court erred in denying Scott's motion to dismiss the indictment charging him with illegal reentry.

We do not express any opinion on Scott's future deportation proceedings, if any, except to emphasize that his illegal reentry conviction is expunged from his record.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment denying Scott's motion to dismiss the indictment and quash his conviction for illegal reentry.