11-2987-cr
United States v. Daley

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: September 6, 2012      Decided: December 7,2012)

Docket No. 11-2987

- - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

            Appellee,

      - v.-

COURTNEY DALEY,

            Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - -x


      Before:        JACOBS, Chief Judge, CARNEY, Circuit
                     Judge, and GLEESON, District Judge.*

      Defendant Courtney Daley appeals from the judgment of

the United States District Court for the Eastern District of

New York (Korman, J.), convicting him of illegal reentry

under 8 U.S.C. § 1326, following a conditional plea.  Daley

challenges the denial of his motion to dismiss the

---

      * The Honorable John Gleeson, United States District
Judge for the Eastern District of New York, sitting by
designation.

indictment. The district court ruled that the entry of the removal order against Daley in absentia was not fundamentally unfair because there was no reasonable probability that Daley would have obtained relief had he received notice of the removal proceeding and been present. Because the district court properly considered Daley's completed criminal conduct in making this discretionary determination, we affirm the judgment.

YUANCHUNG LEE, Federal Defenders of New York, Inc., New York, NY, for Appellant Courtney Daley.

TIANA A. DEMAS (David C. James, on the brief), Assistant United States Attorneys, for Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee United States of America.

DENNIS JACOBS, Chief Judge:

Defendant Courtney Daley appeals from the judgment of the United States District Court for the Eastern District of New York (Korman, J.), convicting him of illegal reentry under 8 U.S.C. § 1326, following a conditional plea. Daley moved to dismiss the indictment on the ground that he was given no notice of the 1998 removal proceedings after which a removal order was entered in absentia. The United States

District Court for the Eastern District of New York (Korman, J.) ruled that the entry of the removal order was not fundamentally unfair because there was no reasonable probability that Daley would have obtained relief had he received notice of the removal proceeding and been present.

While his 1998 immigration proceedings were pending, Daley was arrested for robbery under the Hobbs Act and detained at the Metropolitan Detention Center in Brooklyn, New York. Although he notified the Immigration and Naturalization Service ("INS") of his new address, INS did not properly process the address change and failed to notify Daley of his ongoing immigration proceedings, so that he was ordered removed in absentia.

Daley was removed to Jamaica, his country of origin, but he subsequently returned to the United States. He was arrested again--this time following a domestic altercation with his estranged wife--and indicted for illegal reentry under 8 U.S.C. § 1326. He moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d), on the ground that his 1998 removal order was fundamentally unfair because he was removed in absentia. In order to show fundamental unfairness, however, Daley had to show that, but for the

3

Government's error, there was a reasonable probability that he would have obtained relief from the Immigration Judge ("IJ"). The district court concluded that there was no such probability. Daley ultimately entered a conditional guilty plea that preserved his right to appeal the denial of his motion to dismiss the indictment. Daley was sentenced to 30 months' imprisonment and timely appealed. For the reasons discussed below, we affirm the judgment.

## BACKGROUND

Daley was born in Kingston, Jamaica, in 1968, and came to the United States at the age of fifteen as a lawful permanent resident. In 1995, Daley was indicted in New York for possession of a loaded firearm and bail jumping. After he served a one-year sentence, INS initiated removal proceedings on January 14, 1998, pursuant to Section 237(a)(2)© of the Immigration and Nationality Act (which allows removal of any alien convicted of certain firearm offenses).

At Daley's initial appearance before the IJ in February 1998, he was granted additional time to find a lawyer. A preliminary hearing was eventually scheduled for September

18, 1998. In May 1998, however, Daley was arrested and arraigned in the Eastern District of New York on federal robbery charges under the Hobbs Act (18 U.S.C. § 1951). Daley pled guilty on August 18, 1998, but that conviction did not become final until March 1999.

During the summer of 1998--because of his Hobbs Act arrest--Daley was held without bail at the Metropolitan Detention Center ("MDC") in Brooklyn. At Daley's request, his girlfriend notified the INS that he was in custody at the MDC and submitted a change-of-address form on his behalf. It was received by INS and listed Daley's full name, alien registration number, and Bureau of Prisons number, clearly indicating that Daley was now residing at the MDC in Brooklyn.

INS somehow misplaced or mishandled this form. Presumably because he was not informed of the date, Daley failed to appear for his September 1998 hearing before the IJ. At the hearing, INS suggested that Daley might be incarcerated, and the IJ adjourned to permit INS counsel to determine Daley's whereabouts. Daley did not appear at the subsequent hearing on October 23, 1998, and INS wrongly

informed the IJ that Daley was not in federal or state custody. The IJ ordered Daley removed in absentia.

Daley was subsequently sentenced to 37 months' imprisonment for his Hobbs Act conviction, and upon completing that sentence in January 2001, he was deported to Jamaica. Within a year, Daley returned to the United States.

In February 2010, Daley was again arrested--this time for allegedly threatening his then-estranged wife in Brooklyn. As a result of that arrest, immigration authorities learned of Daley's unlawful presence in the United States. A grand jury indicted Daley in the Eastern District of New York for illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a), (b)(2).

Daley moved to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure and 8 U.S.C. § 1326(d). Daley argued, pursuant to 8 U.S.C. § 1326(d), that it would be fundamentally unfair to rely on the 1998 removal order to establish an element of the illegal reentry offense because the 1998 removal order was entered in violation of his due process rights.

At a November 2010 evidentiary hearing on Daley's motion to dismiss the indictment, Marguerite Mills,

Assistant Chief Counsel for U.S. Immigration and Customs Enforcement, testified as follows concerning INS policy in place at the time: if the IJ had been notified of Daley's Hobbs Act guilty plea on the day of Daley's removal hearing (October 23, 1998), the IJ would have administratively closed the case until the Hobbs Act conviction became final; and after the conviction became final, the IJ could have reopened the case, denied Daley any discretionary relief (including cancellation of removal), and ordered him removed.

In response, Daley relied almost exclusively on United States v. Scott, 394 F.3d 111 (2d Cir. 2005), arguing that the district court should not consider "future occurrences" when determining whether entry of the removal order was fundamentally unfair. Id. at 119.

The district court denied Daley's motion from the bench, on the ground that the failure of notice did not prejudice Daley because he would not have been granted cancellation of removal on October 23, 1998. The district court carefully distinguished Scott: "I'm not looking at future occurrences. I'm looking at what had occurred at the time of the hearing. . . . And it's what distinguishes Scott. In other words . . . if I am going to look at all of

7

the relevant factors at the time of the hearing, then you lose." Tr. of Mot. Hr'g, at 39-40 (Nov. 22, 2010) (App. 208-09). The district court explained further:

> [T]he temporal limitation of Scott deals with a crime that's committed after that hearing. If you wanted to consider[] what happened, all the relevant information as of the date of the hearing and the relevant information includes his guilty plea for which he was ultimately sentenced, and then the question becomes he wouldn't have gotten relief. At most, they would have put off the hearing but . . . he probably wouldn't have gotten relief based on the admission that he made that he committed [Hobbs Act] extortion . . . .

Id. at 43 (App. 212). In short, the district court found no reasonable probability that Daley would have been granted relief had he been present at the 1998 hearing, thus he was not prejudiced, and could not dismiss his indictment for illegal reentry under Section 1326(d). Id. at 52 (App. 221).

Daley thereafter entered a conditional plea to illegal reentry, preserving his right to appeal the denial of the motion to dismiss. On May 3, 2011, the district court sentenced Daley to 30 months' imprisonment. After the district court issued its judgment, Daley timely appealed the denial of the motion to dismiss the indictment.

**DISCUSSION**

Daley's appeal turns on a single issue: whether the district court properly determined that there was no reasonable probability that Daley would have obtained relief had he been notified of his removal proceeding. Before analyzing this issue in light of United States v. Scott, 394 F.3d 111 (2d Cir. 2005), we review the relevant legal standards applicable in these circumstances.

**I**

The question whether the district court properly denied Daley's motion to dismiss the indictment is a mixed question of fact and law, subject to de novo review. United States v. Fernandez-Antonia, 278 F.3d 150, 156 (2d Cir. 2002). We review the district court's factual findings for clear error. United States v. Cerna, 603 F.3d 32, 39 (2d Cir. 2010).

Section 1326(d) places limits on an alien's ability to collaterally attack a removal order when seeking to dismiss an indictment for illegal reentry. In relevant part, Section 1326(d)provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien

9

demonstrates that--

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  The only prong of Section 1326(d) at issue in this appeal is the third one: whether entry of the removal order was fundamentally unfair.  The district court found--and the Government does not dispute--that Daley established the first two prongs (i.e., exhaustion of administrative remedies and deprivation of opportunity for judicial review).

The alien bears the burden of showing that entry of the removal order was fundamentally unfair.  "To show fundamental unfairness [under Section 1326(d)(3)], a defendant must show both a fundamental procedural error and prejudice resulting from that error."  United States v. Copeland, 376 F.3d 61, 70 (2d Cir. 2004) (internal quotation marks omitted).  More specifically, "in order to demonstrate prejudice an alien must show that his proceeding contained errors so fundamental that he might have been deported in

10

error." Fernandez-Antonia, 278 F.3d at 159. We have adopted the same test for prejudice as used to decide claims of ineffective assistance of counsel: "[P]rejudice is shown where 'there is a reasonable probability that, but for [the error], the result of the proceeding would have been different.'" Copeland, 376 F.3d at 73 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)). In sum, the relevant inquiry for the district court--and now for us--was whether there was a reasonable probability that Daley would have been granted cancellation of removal at his October 23, 1998 removal hearing.

Cancellation of removal is a discretionary form of relief available if an alien "has been . . . lawfully admitted for permanent residence for not less than 5 years," "has resided in the United States continuously for 7 years after having been admitted," and "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). An IJ's decision regarding cancellation of removal consists of "discretionary and factual determinations." Barco-Sandoval v. Gonzales, 516 F.3d 35, 36 (2d Cir. 2007). The IJ may consider "various positive and negative discretionary factors" when making this determination, including a criminal record, which can "weigh[] strongly against

11

granting . . . discretionary relief." Ledesma v. Holder, 450 F. App'x 51, 53 (2d Cir. 2011); see also Rosario v. Holder, 627 F.3d 58, 62 (2d Cir. 2010) (noting that "factfinding and factor-balancing . . . are at the core of [the IJ's] discretion").

With these legal standards in mind, we turn to examine whether the district court properly considered Daley's Hobbs Act guilty plea (and the likely results of that guilty plea) when determining whether there was a reasonable probability that Daley would have obtained cancellation of removal.

## II

Fundamental unfairness arises when a "fundamental procedural error" is coupled with "prejudice resulting from that error." Copeland, 376 F.3d at 70. The Government concedes that Daley established procedural error, and that on October 23, 1998, Daley was technically eligible for cancellation of removal. But Daley had to show a resulting prejudice: a reasonable probability that but for the error, he would not have been ordered removed. The district court found that Daley "wouldn't have gotten relief" notwithstanding that the Hobbs act conviction to which he had pled had not yet become final. Tr. of Mot. Hr'g, at 43

12

(App. 212). The district court credited the testimony of Marguerite Mills as to what would have happened had the IJ been aware of Daley's Hobbs Act guilty plea, but also took a broader view, concluding that regardless of whether Daley's Hobbs Act guilty plea had yet become a final conviction, an IJ considering "all the relevant information as of the date of the hearing" would not have granted Daley discretionary relief. Id. at 39, 43-44 (App. 208, 212-13).

On appeal, Daley relies on United States v. Scott, 394 F.3d 111 (2d Cir. 2005). In that case, a lawful permanent resident was ordered removed in 1996 after two criminal convictions in New York. Id. at 113-14. He was ordered removed in absentia and never applied for waiver of deportation (the equivalent of cancellation of removal at that time). Id. He later claimed that his counsel during the removal proceedings was ineffective. Id. In 1998, after the IJ issued the removal order but before he was deported, Scott was convicted for possession of burglar's tools. Id. After his deportation and subsequent reentry, he was arrested in New York for grand larceny (among other things). Id. at 114. Following that arrest, he was charged with illegal reentry after deportation under 8 U.S.C. § 1326 and sought to dismiss his indictment and collaterally

13

challenge his deportation pursuant to Section 1326(d).

We ruled that the district court erred by considering "ex post data"--specifically, Scott's 1998 conviction for possession of burglar's tools--in determining whether, in 1996, Scott would have had a reasonable probability of relief at his deportation proceeding.  Id. at 118.

As we explained, Section 1326(d)'s "focus on the 'entry' of the [removal] order suggest a temporal limitation on the district court's inquiry."  Id.  "In other words, the statute itself indicates that, contrary to the district court's analysis, the only pertinent issue is whether entry of the deportation order *in 1996* prejudiced Scott--regardless of Scott's potential deportability for some later crimes."  Id. (emphasis in original).  "[A]s we are presently concerned about the process afforded to Scott at his deportation proceeding in 1996, it would be anomalous to consider *criminal conduct* after that date."  Id. at 119 (emphasis added).  In sum, "in assessing whether the defendant-alien had a reasonable probability of not being deported at his proceeding but for [the error], the district court should reconstruct events as they existed at the time of the disputed deportation proceeding, without considering future occurrences."  Id.

14

Here, the district court's ruling--that there was no reasonable probability that Daley would have been granted cancellation of removal--was based on circumstances as they existed on October 23, 1998, the day of Daley's removal proceeding.  Tr. of Mot. Hr'g, at 39, 43-44 (App. 208, 212-13).  It therefore did not run afoul of Scott.

In determining whether there was a reasonable probability of relief, the district court could and did consider Daley's entire criminal record as it existed at the relevant time, including his Hobbs Act guilty plea. Copeland, 376 F.3d at 74 (allowing review of entire criminal record prior to removal proceeding); Scott, 394 F.3d at 118-19 (same).  It considered "all relevant information" that would have been available on the day of the removal proceeding, including the fact that Daley had pled guilty to Hobbs Act robbery, when making its determination as to whether the IJ would have afforded Daley discretionary cancellation of removal.  Tr. of Mot. Hr'g, at 53 (App. 222).  Unlike the criminal conduct in Scott--which occurred after the removal order was entered--Daley made his Hobbs Act guilty plea before October 23, 1998, the date of his removal proceedings.

15

Two considerations support this conclusion.  First, the district court's "reasonable probability" analysis, by its nature, requires some degree of speculation.  We have explained that "the courts must necessarily play the role of prognosticator, and divine whether, had the error not occurred, the defendant would likely have obtained immigration relief."  Edwards v. INS, 393 F.3d 299, 311 (2d Cir. 2004).  Daley's critique that the district court's determination was speculative or uncertain therefore gains no traction.

In addition, the IJ's underlying determination whether to grant cancellation of removal is also highly discretionary.  See Barco-Sandoval, 516 F.3d at 36. Cancellation of removal is essentially a matter of administrative grace.  Arqueta v. Holder, 617 F.3d 109, 113 (2d Cir. 2010); see Jay v. Boyd, 351 U.S. 345, 354 (1956). Here, the district court analyzed circumstances as they existed on October 23, 1998 and concluded that there was no reasonable probability that the IJ would have exercised his discretion in Daley's favor.  Daley presents no compelling reason to disturb that determination.

While an extreme reading of Scott could suggest that the district court should not consider anything that

16

occurred or could have occurred after the day of the removal order, the upshot of Scott is to prohibit consideration of *criminal conduct* occurring after entry of the removal order. Scott, 394 F.3d at 119 (noting that "it would be anomalous to consider criminal conduct after" the relevant date). To achieve Daley's desired result, one must read the line from Scott suggesting that a district court judge should "reconstruct events as they existed at the time of the disputed deportation proceeding, without considering future occurrences" to mean that the judge cannot consider the likely effects of *already completed* conduct. Such a reading would be inconsistent with the district court's inherently speculative role in carrying out the "reasonable probability" analysis and with the IJ's broad discretion in granting relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgment.

17