12-4837-cr
*United States v. Canori*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2013

No. 12-4837-cr

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ERIC CANORI,

*Defendant-Appellant,*

MELISSA GIOVE AND ROBERT REINFURT,

*Defendants.*[*]

————

Appeal from the United States District Court

for the Northern District of New York.

No. 09 CR 406 (GLS) — Gary L. Sharpe, *Chief Judge*.

————

SUBMITTED: OCTOBER 28, 2013

DECIDED: DECEMBER 4, 2013

————

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

Before: WALKER, CABRANES, and PARKER, *Circuit Judges*.

————

Defendant Eric Canori appeals from the judgment of the District Court for the Northern District of New York (Gary L. Sharpe, *Chief Judge*) sentencing him principally to thirty months' imprisonment after he pleaded guilty to conspiracy to distribute and to possess with intent to distribute 100 or more kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). Canori contends that a recent memorandum issued by the U.S. Department of Justice created a *de facto* "rescheduling" of marijuana under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, such that he cannot validly be charged with conspiracy to distribute marijuana.

We hold that there has been no such "rescheduling" of marijuana. The Attorney General has not rescheduled it pursuant to the procedures of the CSA, nor has Congress amended the statute. Marijuana remains classified as a Schedule I substance.

Accordingly, we **AFFIRM** the judgment of the District Court.

————

DAVID CLIFFORD HOLLAND, New York, NY *for Appellant Eric Canori.*

RICHARD D. BELLISS and BRENDA K. SANNES, Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee United States of America.*

————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant Eric Canori appeals from the judgment of the District Court for the Northern District of New York (Gary L. Sharpe, *Chief Judge*), entered November 27, 2012, sentencing him principally to thirty months' imprisonment after he pleaded guilty to conspiracy to distribute and to possess with intent to distribute 100 or more kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1).[1]  As part of his plea agreement, Canori reserved his right to appeal the District Court's denial of his motion to dismiss the indictment.  In that motion, and now on appeal, Canori contends that an October 2009 memorandum issued by Deputy Attorney General David W. Ogden of the U.S. Department of Justice (the

---

[1] The criminal statutes to which Canori pleaded guilty read, in relevant part:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

21 U.S.C. § 841(a).  Section 846, in turn, criminalizes a conspiracy to commit such an offense:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

*Id.* § 846.

"Ogden Memo") created a *de facto* "rescheduling"[2] of marijuana under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, such that he cannot validly be charged with conspiracy to distribute marijuana.  Canori further argues that, because marijuana has been *de facto* rescheduled, his conviction violated his rights under the Due Process and Equal Protection Clauses of the United States Constitution, and his constitutional right to the effective assistance of counsel.

## DISCUSSION

Canori moved to dismiss his indictment on the basis that the Ogden Memo led to a *de facto* rescheduling of marijuana, such that it was no longer a Schedule I drug under the CSA.  In its Memorandum-Decision and Order dated January 25, 2011, the District Court rejected this argument as "wholly without merit."  We review a district court's denial of a motion to dismiss an indictment *de novo*.  *See, e.g.*, *United States v. Daley*, 702 F.3d 96, 99–100 (2d Cir. 2012); *United States v. Yannotti*, 541 F.3d 112, 121 (2d Cir. 2008).  For the reasons stated below, we agree with the District Court.

---

[2] By "rescheduling," we refer to the transfer of a substance from one schedule of the CSA to another, with the result of lessening the statutory restrictions on its use and distribution.  Canori does not say to which schedule he thinks marijuana has been transferred, but he argues that it has been removed from Schedule I, with the concomitant reduction in criminal penalties.

## A. Statutory Scheme

The CSA "creates a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules." *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006) (citations omitted). The CSA organizes substances into fives schedules based on (1) their potential for abuse, (2) their accepted medical uses, and (3) their accepted safety for use under medical supervision and potential for psychological or physical dependence. *See* 21 U.S.C. § 812. Schedule I,[3] in which marijuana is expressly classified, *see id.* Schedule I(c)(10), contains the most severe restrictions on use, the violation of which may result in criminal penalties, *see id.* § 841(b). We have previously upheld the constitutionality of Congress's classification of marijuana as a Schedule I drug. *See United States v. Kiffer*, 477 F.2d 349, 355–57 (2d Cir. 1973).

The scheduling of controlled substances under the CSA is not static. Not only can Congress amend it, but the statute itself includes a provision permitting the Attorney General to add or transfer a drug to a particular schedule if he "(A) finds that such

---

[3] The findings required for a drug to be listed as a Schedule I substance are:

(A) The drug or other substance has a high potential for abuse[;] (B) The drug or other substance has no currently accepted medical use in treatment in the United States[; and] (C) There is a lack of accepted safety for use of the drug or other substance under medical supervision.

21 U.S.C. § 812(b)(1).

drug or other substance has a potential for abuse, and (B) makes with respect to such drug or other substance the [requisite findings, *see* note 3, *ante*] for the schedule in which such drug is to be placed." *Id.* § 811(a)(1).[4]  The CSA mandates that such a reclassification by the Attorney General be made "on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed by [the Administrative Procedure Act ('APA') at 5 U.S.C. § 553]."  *Id.* § 811(a).  In assessing the scientific and medical factors relevant to this rulemaking process, the Attorney General is required to request an evaluation from the Secretary of Health and Human Services, and accept the findings contained in the evaluation as binding.  *Id.* § 811(b); *see also Gonzales*, 546 U.S. at 250.

## B.  Ogden Memo

On October 19, 2009, Deputy Attorney General Ogden issued a "Memorandum for Selected United States Attorneys."  The Ogden Memo acknowledges that some States have enacted laws authorizing the medical use of marijuana, and it provides guidance to U.S. Attorneys within those States as to how to exercise their prosecutorial discretion consistent with Department of Justice priorities.  Specifically, the Memo states that, while "[t]he prosecution of significant traffickers of illegal drugs, including marijuana, . . . continues to be a core priority," U.S. Attorneys "[a]s a general matter . . . should not focus federal resources in [their] States

---

[4] The Attorney General also has the authority to remove the drug from the schedules entirely "if he finds that the [drug] does not meet the requirements for inclusion in any schedule."  *Id.* § 811(a)(2).

on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana." Accordingly, the Memo advises that prosecutors focus their resources on illegal drug trafficking activity (including marijuana) involving factors such as firearms, violence, sales to minors, and significant amounts of marijuana, *i.e.*, factors that are inconsistent with compliance with applicable state law. Notably, however, the Memo does *not* purport to legalize or reclassify marijuana:

> [T]his memorandum does not alter in any way the Department's authority to enforce federal law, including laws prohibiting the manufacture, production, distribution, possession, or use of marijuana on federal property. *This guidance regarding resource allocation does not "legalize" marijuana or provide a legal defense to a violation of federal law, nor is it intended to create any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or witness in any administrative, civil, or criminal matter.* Nor does clear and unambiguous compliance with state law or the absence of one or all of the above factors create a legal defense to a violation of the Controlled Substances Act. Rather, this memorandum is intended solely as a guide to the exercise of investigative and prosecutorial discretion.

Ogden Memo 2 (emphasis supplied).

On June 29, 2011, the Department of Justice issued a follow-on memorandum from Deputy Attorney General James M. Cole (the

"Cole Memo").  The Cole Memo reaffirmed the guidance issued in the Ogden Memo, and reiterated that "[p]ersons who are in the business of cultivating, selling or distributing marijuana, and those who knowingly facilitate such activities, are in violation of the Controlled Substances Act, regardless of state law."  Cole Memo 2. It further noted that "[t]he Ogden Memorandum was never intended to shield such activities from federal enforcement action and prosecution, even where those activities purport to comply with state law."  *Id.*[5]

## C.  Marijuana Has Not Been "Rescheduled"

Canori contends that, by virtue of the Ogden Memo and its progeny, the Attorney General has "implicitly" and unilaterally exercised his powers under § 811 of the CSA to reclassify marijuana from its current status as a Schedule I substance.  Yet both the Ogden and Cole Memos expressly state and reiterate that the guidance contained therein does not affect marijuana's classification as a Schedule I substance under the CSA.

Even assuming *arguendo* that the Attorney General had expressed an intention to reclassify marijuana, which, as stated above, he did not, the CSA mandates a particular procedure under the APA through which the Attorney General may reclassify a drug. *See* 21 U.S.C. § 811; *see also* Part A, *ante*; *accord Gonzales*, 546 U.S. at

---

[5] After the close of briefing in this case, on August 29, 2013, the Department of Justice issued yet another memorandum from Cole relating to marijuana enforcement under the CSA.  Although the parties have not addressed this memorandum, it does not in any way alter our conclusions.

259–60 ("The CSA gives the Attorney General limited powers, to be exercised in specific ways."). This procedure is the exclusive means provided by statute for the Attorney General to reclassify a substance; he cannot do so "implicitly" or by fiat. Here, the Attorney General has not followed the required rulemaking procedures outlined in 5 U.S.C. § 553 to effectuate a "rescheduling" of marijuana, and so marijuana remains a Schedule I substance.

Canori next argues that we must recognize a *de facto* reclassification in order to avoid what he characterizes as a "constitutional nullification crisis." Appellant's Br. 30. According to Canori, if the Ogden Memo did not *de facto* reschedule marijuana, those States that have legalized medical marijuana have somehow "undermine[d] the doctrine of Federalism and the Supremacy Clause of the United States Constitution." *Id.* at 31.

This argument also fails. Marijuana remains illegal under federal law, even in those states in which medical marijuana has been legalized. *See* 21 U.S.C. § 903 (providing for preemption where "there is a positive conflict between [a provision of the CSA] and that State law such that the two cannot consistently stand together"). That the Department of Justice has chosen to prioritize certain types of prosecutions unequivocally does not mean that some types of marijuana use are now legal under the CSA. Rather, "prosecutors are permitted discretion as to which crimes to charge and which sentences to seek." *United States v. Gonzalez*, 682 F.3d 201, 204 (2d Cir. 2012); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute

discretion to decide whether to prosecute a case."). The Attorney General's exercise of that discretion, in the Ogden Memo, neither legalizes marijuana nor creates a constitutional crisis.

Canori's additional arguments on appeal are all dependent on a finding that marijuana is no longer a Schedule I substance because it has been *de facto* rescheduled. As such, we find each of them to be without merit.

**CONCLUSION**

To summarize, we hold that:

(1) Recent memoranda issued by the U.S. Department of Justice did not purport to reclassify marijuana from its current listing as a Schedule I substance under the Controlled Substances Act.

(2) The Controlled Substances Act mandates a particular rulemaking procedure through which the Attorney General may "reschedule" a substance, with the result of lessening the statutory restrictions on its use and distribution. Because the Attorney General did not follow that procedure here—and indeed, did not purport to follow that procedure here— marijuana remains a Schedule I substance.

(3) A U.S. Attorney's decision to exercise prosecutorial discretion by not prosecuting uses of marijuana consistent with state law, in the circumstances presented here, does not conflict

with the principles of federalism, preemption, or the supremacy of federal law.

For the reasons set out above, we **AFFIRM** the judgment of the District Court, entered November 27, 2012.