Cannabis Impact Prevention Coalition, LLC v New York State Cannabis Control Bd. (2025 NY Slip Op 25045)

[*1]

Cannabis Impact Prevention Coalition, LLC v New York State Cannabis Control Bd.

2025 NY Slip Op 25045

Decided on February 21, 2025

Supreme Court, Albany County

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 21, 2025
Supreme Court, Albany County

Cannabis Impact Prevention Coalition, LLC; CANNABIS INDUSTRY VICTIMS SEEKING JUSTICE, LLC; RENNE BARCHITTA; EDWIN DE LA CRUZ; 
 ERIC R. DE LA CRUZ; PHIL ORENSTEIN; PHILIP MCMANUS; ROBERT CAEMMER; RICHARD P. MCARTHUR; AND RONNIE HICKEY, Plaintiffs,

against
New York State Cannabis Control Board; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; TREMAINE WRIGHT, CHAIRWOMAN OF THE NEW YORK STATE CANNABIS CONTROL BOARD, IN HER OFFICIAL CAPACITY; FELICIA A. B. REID, EXECUTIVE DIRECTOR & ACTING EXECUTIVE DIRECTOR OF THE NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT, IN HER OFFICIAL CAPACITY; AMANDA HILLER, ACTING TAX COMMISSIONER OF THE STATE DEPARTMENT OF TAXATION AND FINANCE, IN HER OFFICIAL CAPACITY; NEW YORK SOCIAL EQUITY CANNABIS INVESTMENT FUND, LP; DORMITORY AUTHORITY OF THE STATE OF NEW YORK; and SOCIAL EQUITY SERVICING CORPORATION, Defendants.

Index No. 907269-24

LETITIA JAMES 
Attorney General of the State of New York 
By: ALEXANDER POWHIDA Assistant Attorney General
Attorney for the Moving Defendants 
New York State Cannabis Control Board; and
New York State Office of Cannabis Management; and 
Tremaine Wright, Chairwoman of the New York 
State Cannabis Control Board; and
Felicia A. B. Reid, Executive Director 
& Acting Executive Director of the 
New York State Office Cannabis Management; and 
and Amanda Hiller, Acting Tax 
Commissioner of the State Department of 
Taxation and Finance 
The Capitol 
Albany, New York 12224 
NIXON PEABODY LLP 
Thomas M. Mealiffe, Esq. 
Attorneys for Defendants 
New York Social Equity Cannabis Investment Fund, LP, 
Dormitory Authority of the State of New York, 
and Social Equity Servicing Corporation 
Tower 46, 55 West 46th Street 
New York, New York 10036
TABNER, RYAN & KENIRY, LLP 
William J. Keniry, Esq. 
Graham A. Thompson, Esq. 
Attorneys for Plaintiffs 
18 Corporate Woods Boulevard, Suite 8 
Albany, N.Y. 12211

Peter A. Lynch, J.

INTRODUCTION
Plaintiffs seek a declaration that expenditure of monies from the New York State cannabis revenue fund established under State Finance Law § 99-ii (hereinafter the "Fund") to build turn-key marihuana dispensaries, directly conflicts with the Controlled Substances Act (21 USC § 801 et. seq.) (hereinafter the "CSA") and is preempted under the Supremacy Clause of the United States Constitution (U.S. Const. Art. VI, para. 2). Plaintiffs seek relief pursuant to State Finance Law § 123, including a permanent injunction to enjoin any further expenditures.

HISTORICAL CONTEXT
Conflict between local and federal interests is longstanding. Of course, the quest to preserve local identity evolved from the Colonies' issuance of the Declaration of Independence on July 4, 1776, to the adoption of the Articles of Confederation in 1781, and ultimately to powers "reserved to the States, respectively, or to the people" set forth in the Tenth Amendment of the Constitution adopted in 1787, ratified in 1788, as amended in 1791.
Here, New York State adopted legislation that, at first blush, flies in the face of federal [*2]law, and is challenged as such by Plaintiff. In McCulloch v. Maryland, 17 U.S. 316, 400-401 [1819], Chief Justice Marshall addressed the significance of a like conflict as follows:
"In the case now to be determined, the defendant, a sovereign State, denies the obligation of a law enacted by the legislature of the Union, and the plaintiff, on his part, contests the validity of an act which has been passed by the legislature of that State. The constitution of our country, in its most interesting and vital parts, is to be considered; the conflicting powers of the government of the Union and of its members, as marked in that constitution, are to be discussed; and an opinion given, which may essentially influence the great operations of the government. No tribunal can approach such a question without a deep sense of its importance, and of the awful responsibility involved in its decision." (Emphasis added)
Stated another way, the instant conflict is no small matter!
One of the earliest state actions to nullify federal law came with the passage of the Kentucky and Virginia Resolutions. Each State boldly asserted the Alien and the Sedition Acts adopted by Congress in 1798 were unlawful and, thus, not binding. The authors, Thomas Jefferson, and James Madison were engaged in political conflict with President John Adams and the Federalist controlled Congress but were also keenly sensitive to the Sedition Act's adverse impact on the right of free speech under the First Amendment, especially political speech (See Eeoc v. Wyo., 460 U.S. 226, 271-272 [1983] (Stevens concurring dissent), where the Court held,
"In both cases it was clear that the powers reserved to the States were treated as a substantive limitation on the authority of Congress. It was asserted that these powers enabled a State to interpose its will against any action by the National Government.")
(See also, United States v. Navarro-Vargas, 408 F.3d 1184, 1194 [9th Circuit Court of Appeals May 23, 2005]). Without question, these Resolutions were a potential major blow to the Union, then in its formative years. Other States did not, however, join those nullification claims at that time (See State ex rel. Marcolin v. Smith, 105 Ohio St. 570, 621-622 [Supreme Court, 1922]). 

Here we are, 227 years later, and the conflict is not so stark as presented by the Kentucky and Virginia Resolutions, but it exists. The New York State Legislature absolutely knows that distribution and sale of cannabis is unlawful under the CSA, yet it not only legalized such actions but provides funding and assistance, therefore. In so doing, however, the Legislature expressly stated its' legislation does not "pose any obstacle to the federal enforcement of federal law" (Cannabis Law § 2). Really! Did New York Legislature effectively give lip service to federal law or, did it concede the supremacy of federal law? A distinction must be made! Thus, while this is not a case of express nullification as in 1798, the subject preemption issue warrants scrutiny.

SUPREMACY CLAUSE
The Supremacy Clause (USCS Const. Art. VI, Cl 2) provides:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (Emphasis added)
In Cohens v. Virginia, 19 U.S. 264, 381 [1821], Justice Marshall conveyed the import of the supremacy clause as follows:
"This is the authoritative language of the American people; and, if gentlemen please, of the American States. It marks, with lines too strong to be mistaken, the characteristic distinction between the government of the Union, and those of the States. The general government, though limited as to its objects, is supreme with respect to those objects. This principle is a part of the constitution; and if there be any who deny its necessity, none can deny its authority."(Emphasis added)
In Haaland v. Brackeen, 599 U.S. 255, 287 [2023], the Court (Barrett, J.) recently noted,
"Thus, when Congress enacts a valid statute pursuant to its Article I powers, state law is naturally preempted to the extent of any conflict with a federal statute. End of story." (Emphasis added)

 Not quite! Here, the story begins with a determination of whether the state law is preempted in the first instance.
 PREEMPTION
In Art v. Seggos, 2024 U.S. App. LEXIS 28736 [2nd Circuit Court of Appeals Nov. 13, 2024], the Court recognized that there are three types of preemption, holding:
"(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." (Emphasis added)
Here, conflict preemption is at issue.
In the Complaint, Plaintiff alleged, inter alia:
173. The United States Constitution declares that the United States Constitution and all United States' laws "shall be the supreme Law of the Land" (U.S. Const. Art. VI, para. 2).
174. Where there is a positive conflict between federal and state law, the Supremacy Clause of the U.S. Constitution unambiguously provides that federal law shall prevail and control.
175. Under MRTA, the Defendants, in the course of their duties, have caused, are now causing, and/or are about to cause wrongful expenditures, misappropriations, misapplications, and/or other illegal or unconstitutional disbursements of state funds or state property, in violation of federal laws and as applied, directly conflicts with, violates, and otherwise stands as an obstacle to compliance with and the enforcement of federal laws, including Congress's mandate that production, possession, and distribution of marihuana, be prohibited.
176. As applied, under MRTA, the Defendants, in the course of their duties, have caused, are now causing, and/or are about to cause wrongful expenditures, misappropriations, misapplications, and/or other illegal or unconstitutional disbursements of state funds or state property, in violation of federal laws and as applied, directly conflicts with, [*3]violates, and otherwise stands as an obstacle to compliance with and the enforcement of federal laws, including Congress's mandate that production, possession, and distribution of marihuana, be prohibited.[FN1] (Emphasis added)

As pled, the issues presented are easily stated. First, is it possible for a licensed dispensary operator to comply with both state and federal law? I think not since cannabis distribution and sale are unlawful under the CSA. End of story! Next, does the state's licensing structure serve as an obstacle to the achievement of federal objectives? The answer to the second query is anything but straight forward. 

In Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-373 [2000], the Court addressed the meaning of the term obstacle in context of a preemption issue, as follows:
"What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects. For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished  if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect  the state law must yield to the regulation of Congress within the sphere of its delegated power." (Internal quotations and citations omitted; emphasis added)
Here, the contrast between state and federal legislative schemes authorizing or prohibiting the sale and distribution of marihuana, respectively, appears stark. Yet, on examination, it is manifest that the legislative schemes can and do co-exist.

BURDEN OF PROOF
As a preliminary matter this is a facial challenge to the constitutionality of the statute, requiring Plaintiff to prove there is no set of circumstances where the state and federal law may exist concurrently (See United States v. Salerno, 481 U.S. 739, 745 [1987], where the Court held,
A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.)
This is a heavy burden (See Marentette v. Abbott Labs., Inc., 886 F.3d 112, 117 [2nd Circuit Court of Appeals 2018] where the Court recognized an assumption against conflict preemption, holding,
"When addressing federal preemption questions, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action, and therefore start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. In light of this assumption, the party asserting that federal law preempts state law bears the burden of establishing preemption.") (Internal quotations and citations omitted; emphasis [*4]added)
Moreover, there is a presumption of constitutionality that Plaintiff must overcome (See Delgado et al v. State of New York et al 194 AD3d 98, 103[3d Dept. 3/18/21], affirmed 2022 NY LEXIS 2220, where the Court held,
"Legislative enactments enjoy a strong presumption of constitutionality and parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt." (Emphasis added)
Simply stated, Plaintiff bears a heavy burden of proof.

 STATEMENT OF FACTS
The relevant facts are distinct. In the Complaint, it is alleged, inter alia:
135. The Fund, by and through its agents, in identifying locations for retail dispensaries; negotiating and signing leases for those locations; designing, renovating, and furnishing (excluding merchandise) ready-to-operate facilities, paying design/build teams to provide these services; and subleasing those facilities to social equity licensees, among other things, has incurred, is incurring, and is about to incurs costs. These are upfront capital costs associated with opening an RCD [Conditional adult-use retail dispensaries].
146. As of December 30, 2023, the Fund has executed twenty-four (24) leases for cannabis dispensaries, sixteen (16) locations of which were matched to CAURD licensees and eight (8) locations of which are currently undergoing the OCM matching process.
147. As of the date December 30, 2023, the Fund has entered into loan and sublease agreements with eight (8) of the CAURD licensees in matched locations.[FN2]
Plaintiffs acknowledge Fund monies are not used to acquire marihuana but rather are expended to develop as-built, turn-key facilities for ultimate use as dispensaries by social equity licensees. Moreover, there is no dispute that these activities are authorized by New York State Law.[FN3]

MOTIONS TO DISMISS
Defendants, New York State Cannabis Control Board; New York State Office of Cannabis Management; Tremaine Wright, Chairwoman of the New York State Cannabis Control Board, in her official capacity; Felicia A. B. Reid, Executive Director & Acting Executive Director of the New York State Office Cannabis Management, in her official capacity; and Amanda Hiller, Acting Tax Commissioner of the State Department of Taxation and Finance, in her official capacity, moved to dismiss the action pursuant to CPLR 3211 (a) (2) [standing], (5) [*5][Statute of limitations], (7) [failure to state cause of action], and laches.[FN4]

Defendants New York Social Equity Cannabis Investment Fund, LP, Dormitory Authority of the State of New York, and Social Equity Servicing Corporation also moved to dismiss the action: (1) pursuant to CPLR § 3211(a)(5) as time-barred by the one-year limitation period set forth in CPLR § 215 (4); (2) pursuant to CPLR § 3211(a)(3) for lack of standing to sue; (3) pursuant to CPLR § 3211(a)(7) for failure to state a claim; (4) pursuant to CPLR § 3211(a)(2) for lack subject matter jurisdiction over the action; and (5) in accordance with the equitable doctrine of laches,
In Matter of Schulz v. State of New York 216 AD3d 21, 29 [3d Dept. 2023], the Court held,
"Upon [a pre-answer motion to dismiss a declaratory judgment action], a court may reach the merits of a properly pleaded cause of action for a declaratory judgment where no questions of fact are presented by the controversy[ and, u]nder such circumstances, the motion to dismiss the cause of action for failure to state a cause of action should be taken as a motion for a declaration in the defendant's favor and treated accordingly." (Emphasis added)
(See also, Grand S. Point, LLC v. Bassett, 230 AD3d 49, 67-68 [3d Dept. 2024]). As more fully appears below, the constitutional issue is ripe for a determination on the merits. First, however, let's look at the cross-motion, and then move onto the objections in point of law that Defendants have raised.

CROSS-MOTION [FN5]

Plaintiff filed a cross-motion in opposition to the motions to dismiss and to seek discovery. The purported purpose of discovery would be to itemize and identify the Fund expenditures to date. At this juncture, the sought after discovery is irrelevant, since the constitutional issue presents a question of law and is ripe for review.
Plaintiff's cross-motion for discovery is denied.

SUBJECT MATTER JURISDICTION
Defendants claim this Court lacks jurisdiction. Really! This is a Court of general and original jurisdiction pursuant to New York Judiciary Law §140-b and Article 6 § 7 of the New York State Constitution. Of course, this Court has jurisdiction to make a ruling on the pending motions; in turn, it also has jurisdiction to determine the merits. CPLR § 3001 requires a justiciable issue, and this Court does not issue advisory opinions (see In Re Workmen's Compensation Fund, 224 NY 13 [1918] [Cardozo, J.] where the Court held,
"The function of the courts is to determine controversies between litigants . . . They do not give advisory opinions").
Here, the constitutionality of the State's statutory structure to legalize and fund the construction of facilities for ultimate use as cannabis dispensaries is squarely at issue and is justiciable.
Motion to dismiss for lack of jurisdiction is denied.

STANDING
As a basic premise, standing rules "should not be heavy-handed." (Matter of Association for a Better Long Is., Inc. v. New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]). Here, standing is statutory.
State Finance Law §123 provides:
"It is the purpose of the legislature to recognize that each individual citizen and taxpayer of the state has an interest in the proper disposition of all state funds and properties. Whenever this interest is or may be threatened by an illegal or unconstitutional act of a state officer or employee, the need for relief is so urgent that any citizen-taxpayer should have and hereafter does have a right to seek the remedies provided for herein."
State Finance Law §123-b action for declaratory and equitable relief provides:
"1. Notwithstanding any inconsistent provision of law, any person, who is a citizen taxpayer, whether or not such person is or may be affected or specially aggrieved by the activity herein referred to, may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state Funds or state property, except that the provisions of this subdivision shall not apply to the authorization, sale, execution or delivery of a bond issue or notes issued in anticipation thereof by the state or any agency, instrumentality or subdivision thereof or by any public corporation or public benefit corporation.
2. A plaintiff in such an action may join as a party defendant the recipient or intended recipient of such a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state Funds or state property." (Emphasis added)
It is alleged that Phil Orenstein, Edwin De La Cruz, Eric De La Cruz, Renee Barchitta, and Philip McManus, Robert Caemmerer, Richard P. McArthur, and Ronnie Hickey are citizen taxpayers of the State of New York, and each claim the Defendant's expenditure of State Funds is unconstitutional.[FN6]
Clearly, the individual plaintiffs have standing to sue.
Defendants contend otherwise. In essence, defendants claim Plaintiffs do not have standing to challenge the underly policy decisions of MRTA under the guise of State Finance Law 123-b (See Saratoga County Chamber of Commerce v. Pataki, 100 NY2d 801, 813, [2003] where the Court held,
"Unlike other plaintiffs, citizen-taxpayers need not demonstrate an injury-in-fact to acquire standing. Instead, pursuant to State Finance Law § 123-b (1), a citizen-taxpayer may bring suit to prevent the unlawful expenditure of state Funds "whether or not such person is or may be affected or specially aggrieved" by the challenged action. We have noted that while the statute might be read to allow actions when little or no injury has been claimed, courts have been inhospitable to plaintiffs who seek essentially to [*6]challenge nonfiscal activities by invoking the convenient statutory hook of section 123-b. Accordingly, we have held that a plaintiff's claims must have a "sufficient nexus to fiscal activities of the State" in order to confer standing. A contrary rule would disrupt government operation by posing the threat of litigation to challenge any governmental action.") (Citations omitted; emphasis added)
Policy aside, Plaintiffs have alleged, and challenged, the expenditure of monies to acquire, build, and furnish turn-key facilities for user as marihuana dispensaries, distinct from the expenditure of state Funds to equip any other business enterprise. In the Complaint it is alleged:
145. Upon information and belief, no other business or industry receives this kind of state funding.[FN7]
Certainly, as taxpayers, they have an interest to challenge expenditures to fund a distinct industry, in disregard of all other business interests. Moreover, to deny standing, "an important constitutional issue would be effectively insulated from judicial review." (Saratoga County Chamber of Commerce v. Pataki, supra. at 814). The Court finds the individual Plaintiffs have standing as taxpayers, since their claims have a nexus to the fiscal activities of the State.
Plaintiff also alleged in the verified Complaint the following, inter alia:
12. Plaintiff Phil Orenstein is a member of CIPC who has had devastating personal experiences with marihuana and is a former teacher in a drug prevention and motivational program in NYC public schools.
14. Plaintiff Edwin De La Cruz is a member of CIVSJ and CIPC and is concerned about the damage caused by his son's consumption of marihuana and has been damaged as a result.
16. Plaintiff Eric R. De La Cruz is a member of CIVSJ and CIPC and has been damaged from consumption of marihuana.
24. Plaintiff Richard P. McArther is a member of CIPC and has been damaged from marihuana smoke.
26. Plaintiff Ronnie Hickey is a member of CIPC and has been damaged from marihuana smoke in her apartment building.[FN8]

Since several Plaintiffs alleged damage due to consumption of marihuana, they have standing to sue (See Cannabis Impact Prevention Coalition, LLC v. Hochul, 2024 NY Misc. LEXIS 14151, p. 19-20 [Alb. Co. Sup. Ct. 20204]).
Upon finding the individual Plaintiffs have standing, the Court need not address whether the remaining organizational Plaintiffs have standing (see Saratoga County Chamber of Commerce v. Pataki, supra. at 813, where the Court held,
"Because we conclude that the citizen-taxpayers have standing, it is not necessary to address the State's challenge as to the other plaintiffs.)
(See also, Matter of Wooster v. Queen City Landing, LLC, 150 AD3d 1689, 1690 [4th Dept. 2017]).
Motion to dismiss on lack of standing grounds is denied.

STATUTE OF LIMITATIONS
Defendants claim the statute of limitations for an action brought pursuant to State Finance Law § 123-b is limited to the one-year period set forth in CPLR § 215 (4). I disagree!
In Save the Pine Bush, Inc. v. Albany, 70 NY2d 193, 202 [1987], the Court held,
"In order to determine the Statute of Limitations applicable to a particular declaratory judgment action, the court must "examine the substance of that action to identify the relationship out of which the claim arises and the relief sought."
Here, the substance of the action is a constitutional challenge to the expenditures, and injunctive relief enjoining future expenditures, i.e., it is not simply a fund recovery claim.
CPLR § 215 (4) provides:
The following actions shall be commenced within one year:
4. an action to enforce a penalty or forfeiture created by statute and given wholly or partly to any person who will prosecute; if the action is not commenced within the year by a private person, it may be commenced on behalf of the state, within three years after the commission of the offense, by the attorney-general or the district attorney of the county where the offense was committed . . . "
If the substance of this action was solely to recover funds unlawfully expended, the action would be to enforce a forfeiture governed by CPLR § 215 (4), thereby limiting the recovery to funds unlawfully expended after July 29, 2023, i.e., one year prior to the commencement date (See New York State Asso. of Plumbing-Heating-Cooling Contractors, Inc. v. Egan, 65 NY2d 793 [1985]; Clowes v. Pulver, 258 AD2d 50 [3d Dept. 1999]; Mahler v Campanie, 34 Misc 3d 1219(A) [Albany County Supreme Court 2012]). That, however, is not this case!
It cannot be overstated that an action under State Finance Law § 123-b is one for equitable or declaratory relief relative to wrongful expenditures Respondent "has caused, is now causing, or is about to cause," and, as such, is not confined to a recovery of funds. In the Complaint, as pled, Plaintiff seeks relief, "Enjoining the expenditure of State Funds to cover capital costs associated with establishing Conditional Adult-use Cannabis Retail Dispensaries" and "Declaring that the expenditure of State Funds to cover capital costs associated with establishing Conditional Adult-use Cannabis Retail Dispensaries" . . . as unlawful, wrongful expenditures, misappropriations, misapplications, and/or illegal or unconstitutional disbursements of state funds . . . "[FN9]
As Plaintiff stated,
"Plaintiffs' demand for relief is not for an order disgorging State Funds, or annulling and/or voiding agreements; the relief requested is prospective in nature."[FN10]

Since Plaintiffs do not specifically seek recovery of funds previously expended, the limitations [*7]period under CPLR § 215 (4) does not govern this case.[FN11]
Rather, the statute of limitations for this declaratory judgment action is six (6) years (See CPLR § 213 (1); see Saratoga County Chamber of Commerce v. Pataki, supra. at 815).
Motion to dismiss as untimely under the statute of limitations is denied.

LACHES
In Saratoga County Chamber of Commerce v. Pataki, supra. at 816, the Court recognized the distinction between laches and the applicable limitations period, holding,
"Laches and limitations are not the same. Limitations involve the fixed statutory periods within which actions must be brought, while laches signifies a delay independent of statute. We have defined laches as an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party. The mere lapse of time, without a showing of prejudice, will not sustain a defense of laches. The defense has been applied in equitable actions and declaratory judgment actions (both of which are governed by the six-year catchall provision of CPLR 213 [1]) where the defendant shows prejudicial delay even though the limitations period was met." (Internal quotations and citations omitted)
Here, Plaintiff admits Defendants have expended funds, and alleged "the Fund has executed twenty-four (24) leases for cannabis dispensaries, sixteen (16) locations of which were matched to CAURD licensees and eight (8) locations of which are currently undergoing the OCM matching process." Yet, Plaintiff does not seek recovery of those funds, i.e., no prejudice arising from any delay in asserting a claim. Moreover, Plaintiff alleges the expenditures have been ongoing, rendering the laches defense inapplicable (See Capruso v Village of Kings Point, 23 NY3d 631, 642 [2014], where the Court held,
"Moreover, the doctrine of laches has no application when plaintiffs allege a continuing wrong.")
Last, since the action is timely under the applicable statute of limitations, there is no attendant delay which would support a laches claim in the first instance.
Motion to dismiss on the ground of laches is denied.

CAUSE OF ACTION
The CPLR R 3211 review standard requires that a Court "must give the pleadings a liberal construction, accept the allegations as true and accord the Petitioners every possible favorable inference" (Chanko v. Am. Broad Companies, Inc., 27 NY3d 46, 52 [2016]; see also, Conklin v Laxen, 180 AD3d 1358, 1362 [4th Dept. 2020]; Piller v Tribeca Dev. Group LLC, 156 AD3d 1257, 1261 [3d Dept. 2017]). In Wedgewood Care Ctr. v. Kravitz, 198 AD3d 124, 130 [2d Dept. 2021], the court held,
"On a motion to dismiss for failure to state a cause of action, the pleading is to be afforded a liberal construction. The facts alleged in the complaint must be accepted as true, and the plaintiff is entitled to receive the benefit of every possible favorable [*8]inference. Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery. However, allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration, nor to that arguendo advantage." (Internal quotations and citations omitted; emphasis added).
Assuming the allegations in the complaint are true, and plaintiff is afforded every possible favorable inference thereon, the inquiry must focus on whether it allows for an enforceable right of recovery.
Defendant initially contends that the CSA does not confer a right of action and points out Plaintiff does not claim Defendants violated New York law.[FN12]
Defendants rely on Safe Sts. All. v. Hickenlooper, 859 F.3d 865 [2017 10th Circuit Court of Appeals]. In Hickenlooper, plaintiffs challenged the state of Colorado's legalization of recreational marihuana usage pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1964(c), the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the CSA's preemption provision, 21 U.S.C. § 903. The Court upheld the RICO claim to the extent plaintiff pled a cause of action, but dismissed the preemption claims on the grounds that the plaintiffs lacked any federal substantive right to raise the challenge in the first instance. In dismissing the preemption claim, the Court noted Plaintiff's claim was based in equity, i.e., plaintiffs therein did not cite any statutory authority to challenge the legislation.
I agree with that general proposition that neither the CSA nor the Supremacy Clause confer a private right of action (See Welch v. Atmore Cmty. Hosp., 704 Fed. Appx. 813, 816 [11th Circuit Court of Appeals 2017], where the Court held,
" . . . there is no private right of action under federal law to enforce these alleged violations [of the Controlled Substances Act]."). (Emphasis added)
Defendant's focus on the CSA, however, is misplaced. As distinguished from the equity-based claim in Hickenlooper, here, the right of action arises under the State Finance Law, which affords taxpayers the right to challenge expenditure of State Funds as unconstitutional. The State Finance Law does not limit nor micromanage the grounds for the constitutional challenge. Obviously, Plaintiffs concede Defendants comply with New York's legislative scheme authorizing the distribution and sale of marihuana, but that is not the point. Rather, the issue is whether Plaintiffs may seek relief under State Finance Law § 123 upon a finding that the New York law is preempted under the Supremacy Clause. They may, but that does not end the inquiry!

MARIHUANA REGULATION AND TAXATION ACT
Effective March 31, 2021 (Laws 2021, ch 92, § 1), the legislature adopted, and the Governor approved, the "marihuana regulation and taxation act" (hereinafter "MRTA"). In part, MRTA created the new office of cannabis management, as an independent entity within the division of alcoholic beverage control (See Cannabis Law § 8). MRTA came with a wide spectrum of amendments to New York State law, including the State Finance Law. 
As relevant, State Finance Law (SFL) § 99-ii (3) (d) was adopted and provides:
(d) subject to available appropriations and providing that no more than fifty million dollars in Funding, shall be made available, whether directly or indirectly for investment in a private debt or equity Fund formed pursuant to subdivision thirty-two of section one thousand six hundred seventy-eight of the public authorities law or to cover capital costs associated with establishing conditional adult-use cannabis retail dispensaries for operation by social equity licensees duly licensed pursuant to article two of the cannabis law. Such capital costs shall include all costs, including closely related ancillary costs, related to the leasing, planning, design, construction, reconstruction, rehabilitation, improvement, furnishing, and equipping of such adult-use cannabis retail dispensaries, to the extent such work has been undertaken or costs for such work incurred by: (i) the office of cannabis management and the cannabis control board, (ii) the dormitory authority of the state of New York, or any subsidiary thereof, under agreement with the office of cannabis management and the cannabis control board, or with the private debt or equity Fund formed pursuant to subdivision thirty-two of section one thousand six hundred seventy-eight of the public authorities law, or (iii) the private debt or equity Fund formed pursuant to subdivision thirty-two of section one thousand six hundred seventy-eight of the public authorities law. Any repayment of the state's investment by the Fund, as authorized in this paragraph shall be deposited in the New York state cannabis revenue Fund.[FN13]
(Emphasis)
Fund monies may be used to identify, gain control (e.g. leasing), design, build, furnish and equip brick and mortar adult-use cannabis retail dispensaries for sublease to and operation by social equity licensees (See 9 NYCRR 921.1). This aggressive legislation reflects a sea change in New York State's statutory framework corresponding to cannabis usage. It is these expenditures which Plaintiffs' challenge as unconstitutional.

 CANNABIS LAW
New York State now issues licenses for the distribution and sale of adult-use cannabis pursuant to Article 4 of the Cannabis Law § 61 to 89.
Cannabis Law § 61 (1) provides, inter alia:
"Any person may apply to the board for a license to cultivate, process, distribute, deliver or dispense cannabis within this state for sale."
Simply stated, this provision allows for the grant of a license for "retail sale" of cannabis for adult use (See also, Cannabis Law § 3 (46)).
Cannabis Law § 2 provides, inter alia:
"The legislature finds that existing marihuana laws have not been beneficial to the welfare of the general public. Existing laws have been ineffective in reducing or curbing marihuana use and have instead resulted in devastating collateral consequences including mass incarceration and other complex generational trauma, that inhibit an otherwise law-[*9]abiding citizen's ability to access housing, employment opportunities, and other vital services. Existing laws have also created an illicit market which represents a threat to public health and reduces the ability of the legislature to deter the accessing of marihuana by minors. Existing marihuana laws have disproportionately impacted African-American and Latinx communities.
The intent of this act is to regulate, control, and tax marihuana, heretofore known as cannabis, generate significant new revenue, make substantial investments in communities and people most impacted by cannabis criminalization to address the collateral consequences of such criminalization, prevent access to cannabis by those under the age of twenty-one years, reduce the illegal drug market and reduce violent crime, reduce participation of otherwise law-abiding citizens in the illicit market, end the racially disparate impact of existing cannabis laws, create new industries, protect the environment, improve the state's resiliency to climate change, protect the public health, safety and welfare of the people of the state, increase employment and strengthen New York's agriculture sector.
Nothing in this act is intended to limit the authority of any district, government agency or office or employers to enact and enforce policies pertaining to cannabis in the workplace; to allow driving under the influence of cannabis; to allow individuals to engage in conduct that endangers others; to allow smoking cannabis in any location where smoking tobacco is prohibited; or to require any individual to engage in any conduct that violates federal law or to exempt anyone from any requirement of federal law or pose any obstacle to the federal enforcement of federal law.." (Emphasis added)
In one fell swoop, New York State authorized the sale of marihuana, and acknowledged the enforceability of federal law prohibiting the sale marihuana. Hence, the conundrum!

NEW YORK PENAL
Personal use of cannabis by persons 21 years of age or older is lawful in accord with limited circumstances defined in Penal Law § 222.05, to wit:
1. The following acts are lawful for persons twenty-one years of age or older:
(a) possessing, displaying, purchasing, obtaining, or transporting up to three ounces of cannabis and up to twenty-four grams of concentrated cannabis;
(b) transferring, without compensation, to a person twenty-one years of age or older, up to three ounces of cannabis and up to twenty-four grams of concentrated cannabis;
(c) using, smoking, ingesting, or consuming cannabis or concentrated cannabis unless otherwise prohibited by state law;
(d) possessing, using, displaying, purchasing, obtaining, manufacturing, transporting or giving to any person twenty-one years of age or older cannabis paraphernalia or concentrated cannabis paraphernalia;
(e) planting, cultivating, harvesting, drying, processing or possessing cultivated cannabis in accordance with section 222.15 of this article; and
(f) assisting another person who is twenty-one years of age or older, or allowing property to be used, in any of the acts described in paragraphs (a) through (e) of this subdivision. [*10](Emphasis added)
Otherwise, personal use of cannabis is unlawful in accord with Penal Law § 222.10 to 222.60, ranging from a violation to a Class D felony. Thus, even under New York law, the circumstances determine whether the cannabis usage is legal or not.

 CSA
Under the CSA, adult usage of cannabis is illegal, period! The CSA, however, accounts for the potential conflict between state and federal law. 21 USCS § 903 provides:
"No provision of this title shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this title and that State law so that the two cannot consistently stand together." (Emphasis added)
Of course, this begs the question of whether Fund expenditures to create as-built facilities for use as licensed marihuana dispensaries stands as such a positive conflict with the CSA that the Fund and the CSA cannot consistently stand together. It is, of course, akin to the preemption inquiry. Before answering this question, a review of prior litigation relative to the legalization of medical marihuana is informative.

 MEDICAL MARIHUANA
In New York State, effective March 31, 2021, Medical-Use Cannabis was authorized pursuant to Article 3 of the Cannabis Law § 30 to 40. Thus, while relatively new in this state, the controversy generated by state law authorizing medical use of cannabis, has been a long-standing federal issue.
In Gonzales v. Raich, 545 U.S. 1 [2005], the Court vacated a preliminary injunction enjoining enforcement of the federal Controlled Substances Act (CSA), 84 Stat. 1242, 21 U.S.C. § 801 et seq., squarely framing the conflict between state authorized medical marihuana from the federal prohibition:
"California is one of at least nine States that authorize the use of marijuana for medicinal purposes. The question presented in this case is whether the power vested in Congress by Article I, § 8, of the Constitution "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its authority to "regulate Commerce with foreign Nations, and among the several States" includes the power to prohibit the local cultivation and use of marijuana in compliance with California law."(Id. at p. 5) (Emphasis added)
Noting that most of the controlled substances regulated by the CSA have some medicinal use, the Court held,
" . . . limiting the activity to marijuana possession and cultivation "in accordance with state law" cannot serve to place respondents' activities beyond congressional reach. The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail. It is beyond peradventure that federal power over commerce is "'superior to that of the States to provide for the welfare or necessities of their inhabitants,'" however legitimate or dire those necessities [*11]may be." (Id. p. 29) (Emphasis added)
Thus, in this initial salvo of the conflict, the Court recognized the CSA controlled (See also, Sensoria, LLC v. Kaweske, 581 F. Supp. 3d 1243 [Colorado District Court January 24, 2022], where the Court succinctly stated,
"Simply put, "it is illegal for any private person to possess marijuana for any purpose," even as a medical treatment."
The landscape continued to evolve.
In United States v. Canori, 737 F.3d 181 [2nd Circuit Court of Appeals 2013], the Court addressed the perceived conflict between state approval of medical marihuana usage, and federal law prohibiting the distribution and use of marihuana, in context of 21 USCS § 903. First, the Court recognized that marihuana usage is illegal under federal law, holding, inter alia:
"The CSA creates a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules. The CSA organizes substances into fives schedules based on (1) their potential for abuse, (2) their accepted medical uses, and (3) their accepted safety for use under medical supervision and potential for psychological or physical dependence. See 21 U.S.C. § 812. Schedule I, in which marijuana is expressly classified, see id. Schedule I(c)(10), contains the most severe restrictions on use, the violation of which may result in criminal penalties, see id. § 841(b). We have previously upheld the constitutionality of Congress's classification of marijuana as a Schedule I drug." (Internal quotations and caselaw citations omitted). (Emphasis added)
The Court recognized the Attorney General had discretion to amend the drug schedules under the CSA, and discretion to prosecute, or not.
The Court cited [Ogden] Memo, which provided:
"Specifically, the Memo states that, while "[t]he prosecution of significant traffickers of illegal drugs, including marijuana, . . . continues to be a core priority," U.S. Attorneys "[a]s a general matter . . . should not focus federal resources in [their] States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana." Accordingly, the Memo advises that prosecutors focus their resources on illegal drug trafficking activity (including marijuana) involving factors such as firearms, violence, sales to minors, and significant amounts of marijuana, i.e., factors that are inconsistent with compliance with applicable state law. Notably, however, the Memo does not purport to legalize or reclassify marijuana." (Id. at p. 183) (Emphasis added)
The Court also referenced [Cole] Memo, which provided:
"The Cole Memo reaffirmed the guidance issued in the Ogden Memo and reiterated that "[p]ersons who are in the business of cultivating, selling or distributing marijuana, and those who knowingly facilitate such activities, are in violation of the Controlled Substances Act, regardless of state law." Id. at p. 184) (Emphasis added)
Recognizing the Attorney General discretion, the Court held that preemption did not apply with [*12]respect to state law authorizing medical marihuana use, holding, inter alia:
"Marijuana remains illegal under federal law, even in those states in which medical marijuana has been legalized. See 21 U.S.C. § 903 (providing for preemption where "there is a positive conflict between [a provision of the CSA] and that State law such that the two cannot consistently stand together"). That the Department of Justice has chosen to prioritize certain types of prosecutions unequivocally does not mean that some types of marijuana use are now legal under the CSA. Rather, "prosecutors are permitted discretion as to which crimes to charge and which sentences to seek." United States v. Gonzalez, 682 F.3d 201, 204 (2d Cir. 2012); see also United States v. Nixon, 418 U.S. 683, 693, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."). The Attorney General's exercise of that discretion, in the Ogden Memo, neither legalizes marijuana nor creates a constitutional crisis."(Id. 184-185) (Emphasis added)
Thus, medical marihuana usage under state law may be subject to federal criminal charges as a matter of prosecutorial discretion, and, as such, effectively co-exists with federal law, albeit it remains unlawful under the CSA (See United States v. Correa, 2023 U.S. Dist. LEXIS 133441, p. 8 [North Carolina Western District Court July 31, 2023]; Matter of Barretta v. Pal Envtl. Safety, 207 AD3d 925 [3d Dept. 2022], where Court recognized "In New York, medical marihuana is authorized for the treatment of chronic pain"; See also, Matter of Quigley v Village of E. Aurora, 193 AD3d 207, 211 [3d Dept. 2021], where Court found no conflict between the CSA and the Compassionate Care Act requiring insurer to pay for medical marihuana, holding,
"Although there is no dispute that marihuana is a Schedule I drug such that it is a criminal offense under the federal Controlled Substances Act to manufacture, distribute or possess it (see Gonzales v Raich, 545 US at 14), we note that this Act does provide an exception for certain other controlled substances where the substance "was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his [or her] professional practice" (21 USC § 844 [a]; see § 841 [a] [1]).") 

 Of course, sales for adult recreational use are distinct from sales of medical marihuana, yet the lines are not clear.
 FEDERAL ENFORCEMENT
Marihuana usage has not been decriminalized at the federal level (See United States v. Reinhardt, 2024 U.S. Dist. LEXIS 116924, p. 10 [North Carolina Western District Court July 1, 2024], where the Court held,
"Defendant argues that the White House is decriminalizing marijuana and moving to pardon federal marijuana offenders . . . Additionally, mere efforts to decriminalize marijuana do not support compassionate release motions—even in cases involving marijuana—because federal marijuana law has not yet changed".) (Emphasis added; internal quotations omitted)
Whether the current White House changes policy is beyond the scope of this record. The point made is that federal law has not changed.
In Standing Akimbo, LLC v. United States, 141 S. Ct. 2236 [2021], the court denied certiorari in a case dealing with a Tax Code limitation on expense deductions for companies that deal in controlled substances prohibited by federal law. In so doing, however, Justice Thomas issued a statement, noting,
"Once comprehensive, the Federal Government's current approach is a half-in, half-out regime that simultaneously tolerates and forbids local use of marijuana." (Id. p. 2236-2237) (Emphasis added)
The uncertainty of federal enforcement must be considered in determining whether the New York State Law obstructs federal law and/or presents such a positive conflict that the two cannot consistently stand together.
In recent history, there has been a softening of federal law speaking to the use of cannabis. The AGRICULTURE IMPROVEMENT ACT OF 2018 (hereinafter referred to as the "Farm Act") was passed on December 20, 2018 (Public Law 115-334). The Farm Act defined Hemp as follows:
SEC. 10113. HEMP PRODUCTION. The Agricultural Marketing Act of 1946 (7 U.S.C. 1621 et seq.) is amended by adding at the end the following: ''Subtitle G—Hemp Production ''SEC. 297A. DEFINITIONS. ''In this subtitle: ''(1) HEMP.—The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta 9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry . . .
In United States v. Brown, 47 F.4th 147, 150 [3rd Circuit Court of Appeals, 2022], the Court held, 
"The Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490, removed "hemp" from the definition of marijuana. 21 U.S.C. § 802(16)(B). As defined by the Act, hemp means "any part" and "all derivatives" of the cannabis plant "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). The upshot is that federal law now distinguishes between illegal marijuana and legal hemp based on delta-9 THC concentration." (See also, AK Futures LLC v. Boyd St. Distro, LLC, 35 F.4th 682, 692 [9th Circuit Court of Appeals 2022], where the Court held, 
"The Farm Act's definition of hemp does not limit its application according to the manner by which "derivatives, extracts, [and] cannabinoids" are produced. Rather, it expressly applies to "all" such downstream products so long as they do not cross the 0.3 percent delta-9 THC threshold.")
While not determinative, such legislation does seems to soften the conflict. 

 PREEMPTION FACTORS
In Art v. Seggos, supra., the Court addressed conflict preemption relative to prohibited [*13]sale of ivory products, with certain exceptions, in context of the federal Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., and New York State Environmental Conservation Law § 11-0535-a. Its analysis is useful to discern the nature of the conflict herein.
The Court held the state law was not preempted by federal law, reasoning, 
"The State, however, recognizing a potential for conflict, does not apply its law's prohibitions within the area of conflict and grants licenses to interstate and international sales that are in compliance with the federal law. In view of the State's concession, we find there is no further category of transactions where the State law either permits transactions prohibited by federal law or prohibits transactions that are permitted by federal law . . .
. . . Because Plaintiffs are free to sell these items across state lines in accordance with the ESA, there is no basis to conclude that the State Ivory Law undermines the regulatory scheme established in federal law." (Emphasis added)

 
 Does the legislative concession set forth in Cannabis Law § 2 resolve the preemption issue herein? It does!
 

 
 LEGISLATIVE INTENT/CONCESSION

While a Court may not issue policy rulings, nor comment on the wisdom of legislation, it has a constitutional duty and authority to interpret and rule on the constitutionality of a statute. (See Marbury v. Madison, 1 Cranch 137; 2 L. Ed. 60, 72-74 [1803; see also, Matter of Maron v. Silver, 14 NY3d 230, 263 [2010]; Samuels v. New York State Dept. of Health, 29 AD3d 9, fn.3 [3d Dept. 2006]). In so doing, the Court has a responsibility to recognize the underlying legislative intent (See Matter of Academy v. New York State Educ. Dept., 169 AD3d 1287, 1288 [3d Dept. 2019]; Rackmyer v. Gates-Chili Cent. School Dist., 48 AD2d 180, 183 [4th Dept. 1975]). Where the text of the statute is clear, the Court must also give import to its plain meaning (see People v. Aragon, 28 NY3d 125, 128 [2016]; People v. Ocasio, 28 NY3d 178, 181 [2016]; Morgenthau v. Avion Resources Ltd., 11 NY3d 383, 389 [2008]); see Hernandez v State of New York, 173 AD3d 105, 111 [3d Dept. 2019]; Matter of North Gate Health Care Facility, LLC v. Zucker, 174 AD3d 1202, 1202-1203 [3d Dept. 2019]).
Here, determining what constitutes an "obstacle" for preemption analysis and/or whether such a positive conflict exists between state and federal law that the two cannot consistently stand together, is a matter of judicial interpretation. As set forth in Crosby v. Nat'l Foreign Trade Council, supra., determining what constitutes "a sufficient obstacle is a matter of judgment."
As a matter of common sense, funding as-built dispensaries will potentially contribute to the proliferation of sales, distinct from the illegal sales market (See Gonzales v. Raich, at 28-29, where the Court noted,
"One need not have a degree in economics to understand why a nationwide exemption for the vast quantity of marijuana (or other drugs) locally cultivated for personal use (which presumably would include use by friends, neighbors, and family members) may have a substantial impact on the interstate market for this extraordinarily popular substance. The congressional judgment that an exemption for such a significant segment of the total market would undermine the orderly enforcement of the entire regulatory scheme is entitled to a strong presumption of validity. Indeed, that judgment is not only rational, but "visible to the naked eye," under any commonsense appraisal of the [*14]probable consequences of such an open-ended exemption). (Emphasis added; citations omitted)
Moreover, state law authorization arguably softens the stigma of marihuana usage. Thus, legalizing the sale and distribution of marihuana, and facilitating same by funding as-built turn-key dispensaries, could impact the scope of individuals engaged in the sale and use of marihuana, which could impact enforcement of federal law. There is, however, a distinction between impact and obstruction.
Like the concession in Art v. Seggos, supra., here, Cannabis Law § 2 provided a concession, evincing a legislative intent not to obstruct federal law, i.e., the challenged state legislation does not "require any individual to engage in any conduct that violates federal law or to exempt anyone from any requirement of federal law or pose any obstacle to the federal enforcement of federal law." In turn, those individuals who choose to obtain licenses to distribute and sell marihuana in accord with New York's Cannabis Law, and those individuals who chose to purchase and use marihuana, do so at their own risk of a federal prosecution under the CSA.
The Court notes Justice Thomas' reference to the "half-in, half-out" history of federal enforcement, should be considered in context of evolving attitudes toward marihuana usage (See Matter of Buenos Hill Inc. v. Saratoga Springs Planning Bd., 83 Misc 3d 494, 511 [2024], where the Court declared the New York Cannabis Law was not preempted by the CSA, reasoning,
"As summarized by a recent CRS Report, "the federal response to states' legalizing or decriminalizing marijuana largely has been to allow states to implement their own laws" while reaffirming that "marijuana growth, possession, and trafficking remain crimes under federal law irrespective of states' marijuana laws" (CRS Report, The Federal Status of Marijuana and the Expanding Policy Gap with States [2023])."
(See also Cannabis Impact Prevention Coalition, LLC v. Hochul, 2024 NY Misc. LEXIS 14151, p. 26 [Alb. Co. Sup. Ct. 20204]).
As a practical matter, New York State and federal law effectively co-exist, especially since criminal sanctions remain in place under the New York Penal Law, and federal authorities are free to prosecute CSA violation as a matter of discretion (Cf. United States v. Texas, 719 F. Supp. 3d 640, 674-678 [2024], 144 S. Ct. 797 [2024], 97 F.4th 268 [5th Circuit Court of Appeals 2024]). Thus, no positive conflict exists such that the two cannot consistently stand together in accord with 21 USCS § 903. As stated in United States v. Canori, no constitutional crisis exists herein.
Since the allegations set forth in the Complaint do not provide for a right of discovery, the motion to dismiss the complaint on the grounds that it does not state a cause of action is granted.

PERMANENT INJUNCTION
The standard for a permanent injunction is essentially the same as that of a preliminary injunction but requires that the party seeking the injunction prevail on the underlying merits of the case (see Town of N. E. v Vitiello, 159 AD3d 766 [2d Dept. 2018]; Town of Brookhaven v. Mascia, 38 AD3d 758, 759 [2d Dept. 2007]).
State Finance Law § 123-e (1) provides:
"The court may grant equitable or declaratory relief, or both, including, but not limited to: enjoining the activity complained of; restitution to the state of those public funds disbursed or public property alienated; in the case of public property wrongfully alienated, compelling payment of the full market value; a declaration that a proposed disbursement or alienation of property would be illegal; and such other and further relief as to the court may seem just and proper." (Emphasis added)
It is the determination of the Court that expenditure of funds under State Finance Law (SFL) § 99-ii (3) (d) is not unconstitutional. Thus, injunctive relief, is denied.

 CONCLUSION
For the reasons more fully stated above, the motions to dismiss the Complaint are granted, and it is further,
ORDERED, ADJUDGED AND DECREED, that the complaint is dismissed, and it is further,
ORDERED, ADJUDGED AND DECLARED, that expenditure of monies from the New York State cannabis revenue Fund established under State Finance Law § 99-ii to, inter alia, build turn-key marihuana dispensaries, does not constitute a positive conflict with the Controlled Substances Act (21 USC § 801 et. seq.) so that the two cannot consistently stand together within the parameters of 21 USC § 803 and is not preempted under the Supremacy Clause of the United States Constitution (U.S. Const. Art. VI, para. 2).
This memorandum constitutes the decision, order, and judgment of the Court.[FN14]

Dated: February 21, 2025
Albany, New York
PETER A. LYNCH, J.S.C.
PAPERS CONSIDERED:
All e-filed pleadings, with exhibits.
NYSCEF Doc. Nos. 1 to 45

Footnotes

Footnote 1:NYSCEF Doc. No. 2 — Complaint ¶ 173-167.

Footnote 2:NYSCEF Doc. No. 2 — Complaint ¶ 135, 146-147.

Footnote 3:NYSCEF Doc. No. 19 — Defendant Memo of Law p. 6; NYSCEF Doc. No. 26 — Defendant Memo of Law p. 1.

Footnote 4:NYSCEF Doc. No. 18.

Footnote 5:NYSCEF Doc. Nos. 30-35.

Footnote 6:NYSCEF Doc. No. 2 — Verified Complaint ¶ 11, 13, 15, 17, 19, 21, 23, and 25.

Footnote 7:NYSCEF Doc. No. 2 — Verified Complaint ¶ 145.

Footnote 8:NYSCEF Doc. No. 2.

Footnote 9:NYSCEF Doc. No. 2 — Complaint — Wherefore Clause.

Footnote 10:NYSCEF Doc. No. 34 — Memo of Law p. 20.

Footnote 11:Frankly, the monies were expended to develop as-built facilities, which, even in the event same are not used as dispensaries, may be converted to a lawful use, i.e., the monies were expended on hard assets.

Footnote 12:NYSCEF Doc. No. 19 — Memo of Law p. 16-19; NYSCEF Doc. No. 26 — Memo of Law p. 10-11.

Footnote 13:Plaintiff alleged that the Fund currently has $200,000,000.00 — NYSCEF Doc. No. 2- Complaint ¶ 108-109.

Footnote 14:Notice of Entry and service in accord with CPLR R 2220 is required.